### MIUCKI et al. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. March 24, 1923.)

No. 3120.

1. **Criminal law ☞671—Question of consent to search and admissibility of evidence seized should be determined in absence of jury.**

Where articles taken from defendant's premises without a search warrant are offered in evidence, and the testimony as to whether he consented to the taking is in conflict, the issue should be determined preliminarily to admission of the evidence, and the hearing should be in the absence of the jury.

2. **Criminal law ☞1169(1)—Serious doubt of admissibility of evidence received held ground for reversal.**

The admission of evidence highly prejudicial to defendant, where the record left it in doubt whether it was not obtained in violation of defendant's constitutional rights, *held* ground for reversal.

In Error to the District Court of the United States for the Eastern District of Illinois.

Criminal prosecution by the United States against William Miucki and another. Judgment of conviction, and defendants bring error. Reversed, with directions to grant a new trial.

Arthur R. Felsen, of East St. Louis, Ill., for plaintiffs in error.

W. O. Potter, U. S. Atty., of Marion, Ill.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Plaintiffs in error charge that their conviction for a violation of the National Prohibition Act (41 Stat. 305) was erroneous, because of the admission as evidence of

certain $1 bills taken from their cash drawer without a search warrant.

Defendants were engaged in conducting a "soft drink parlor," which was under surveillance by the prohibition agent. To confirm his suspicions, he gave to one Thomas three marked $1 bills and told him to go into Miucki's place and purchase some whisky. Thomas complied with the request, but retained one of the bills, purchasing his whisky for $2. Shortly after Thomas entered the place, the prohibition agent entered, and, accosting Thomas, asked for and secured the bottle of whisky. Examining Thomas' pockets, one of the three marked $1 bills was found. The prohibition agent then went to the bar, and what occurred, as he related it, may be best described by quoting from the record:

"Q. State whether or not this defendant was in there at that time. A. He was not.

"Q. Who was behind the bar or the counter? A. No one when I went in.

"Q. You say you had a conversation with this woman? A. I did.

"Q. What did she say at that time?

"Mr. Walcott: I object, your honor, to any statements made by the woman, so far as they may apply to the charge against the defendant William Muicki.

"The Court: It may go, subject to that limitation, and the jury will be instructed at the proper time.

"A. I asked her if she knew it was a violation of the law to sell moonshine whisky.

"Q. What did she say? A. Said she hadn't sold any and didn't have any whisky there. I asked her what she was selling or disposing of or allowing to be drunk in the place, and, she said there was no whisky in the place; asked her also if she knew that I was a United States officer; asked her who run the place; said she run it, and husband; asked her where her husband was, and she said he was in bed. I then asked her permission to go back and talk to her husband, and she gave me permission, and I proceeded back through the saloon to the living rooms, and woke Mr. Muicki up; he was in bed asleep. Asked him if he knew whisky was being sold in his place under his direction; he said he didn't know there was any whisky on the place, and I said he better get up and dress; asked him—said, 'If you are sure there was no whisky being sold, then you have no objection to my looking the place over;' and he said to 'go ahead and look it over if you want to.' In the meantime I looked behind the bar and in the first room behind the kitchen, behind the saloon, rather, which is used as a kitchen; then asked Mr. Muicki for $2.00 out of his register, wanted to know why I wanted $2.00 out of his register and I said I had $2.00 in his register, which had just been put in there; that I wanted it as government evidence; first he hesitated, finally he allowed me to take the $2, and I told Mr. Muicki and Mrs. Muicki that there would be a charge filed against them, and, out of respect to Mrs. Muicki being a woman, told Mr. Muicki to put on his hat and coat and come on downtown; didn't arrest Mrs. Muicki.

"Q. Are these the two $1 bills that you found there in their cash register? A. They are."

Both plaintiffs in error testified that the prohibition agent drew a revolver and, pointing it at Mr. Miucki's head, demanded and thus secured the two marked bills. There is no claim that a search warrant was ever issued or in the prohibition agent's possession.

Upon oral argument all other assignments of error were expressly withdrawn or waived. Unfortunately the government has not briefed this, the only controverted issue in the case, but has left it to the court,

"respectfully submitting that the case should be affirmed." Justification for the use of the evidence must depend upon our finding that plaintiffs in error voluntarily turned over the two $1 bills to the government.

The discovery of the bottle of whisky in Thomas' pocket and its production in court were admittedly proper, as was the evidence of its alcoholic content. The prohibition agent was lawfully upon the premises, he being in an open "soft drink parlor." When the whisky was found on Thomas, and two of the marked $1 bills were gone, suspicion pointed strongly to plaintiffs in error. But the prohibition agent had no right to make a search of the premises. Without a warrant he was powerless to search, unless plaintiffs in error were willing that he should do so. If either consented, or voluntarily turned over the evidence, the two marked $1 bills, no violation of Amendments 4 and 5 of the Constitution occurred. In fact, under these circumstances, there would have been no search and no seizure; for a search and seizure suggest force. They are inconsistent with action taken at the owner's invitation or with his consent. 24 R. C. L. p. 723.

Whether the accused consented, or voluntarily turned over evidence, may, as a practical question, be not easy of solution in every case. Certainly the court should be careful to guard the constitutional rights of the accused and to see that the alleged consent was not obtained through fear, or through duress, or other unauthorized or unjustifiable conduct. Respect for the law and the officers of the law may, and no doubt often does, account for the failure of an accused to protest against the search of his premises; and, on examining this or any other record, we cannot ignore the distinction which exists between submission to action (search and seizure perhaps) of government officials and consent to a search of the accused premises. On the other hand, in such a case as this, the court is not justified in looking solely to the testimony of the accused.

[1] Where the evidence is conflicting on this issue, the question of practice becomes important. We think the better practice calls for a procedure similar to that followed where the admission of an alleged confession is sought, and the accused asserts it was not voluntarily made. In such a case the court, in the absence of the jury, conducts the inquiry and after hearing both sides, preliminarily determines its admissibility, leaving its weight and the ultimate determination of its voluntary character, to the jury. Murphy v. U. S. (C. C. A.) 285 Fed. 801. Such a confession having been received, the accused may then offer such relevant evidence as he wishes bearing upon its weight or accuracy. And likewise, where the property of the accused is taken without a search warrant, or upon an invalid search warrant, and the government asserts that the accused consented to its taking and this consent is denied, or the accused asserts that it was not voluntarily given, this issue should be determined preliminarily to the admission of the evidence and the hearing should be in the absence of the jury.

[2] The present case is a good illustration of the necessity of strict adherence to some such rule. If the jury believed that the two marked $1 bills were taken from the till, the outcome of the case could not be

in doubt. The prejudicial effect of such testimony could hardly be removed by any subsequent ruling of the court in the charge or elsewhere. It is needless to add that, if these two $1 bills were obtained from plaintiffs in error at the point of a revolver, without any search warrant, as claimed by both plaintiffs in error, their constitutional rights were invaded and such evidence was inadmissible upon the trial. Jozwich v. U. S. (C. C. A.) 288 Fed. 831. Even from the testimony of the only government witness, there is a suggestion that consent to take the money was never given, for he says:

"First he hesitated; finally he allowed me to take the $2."

The record shows that the accused were very ignorant; an interpreter being necessary for one of them. They were of a class of people who would readily be intimidated or overawed by an officious government official, and we think the court, who heard and saw them, should have first determined whether this evidence was taken in violation of the constitutional provisions above referred to.

The difficulty in the present case lies in the absence of a satisfactory record to present the question. No objection was made to the reception of the oral evidence given by the prohibition agent. Objection was made to the reception in evidence of the two marked $1 bills, but counsel did not suggest the proper ground for objection. Later, after the government had rested, both accused parties took the stand and stated that the money was obtained from the till at the point of a revolver. The court's instructions are entirely silent upon this issue; but here again, unfortunately for plaintiffs in error, no requests for proposed instructions were made, nor were exceptions taken to the charge as given. True, there was a motion "to strike out all the government's evidence"; but this was manifestly too comprehensive, and was properly denied. The court, however, at no time or place passed upon the admissibility of this evidence, upon the question of defendants' consent to a search or to the seizure of the two $1 bills, without which this evidence was inadmissible.

Under all the circumstances, we think this is a case for the application of section 269 of the Judicial Code (Comp. St. § 1246). Basing our conclusion upon the entire record, we feel compelled to direct a reversal of the judgment for the failure of the court to determine the admissibility of the two $1 bills, and entertain the hope and expectation that these two ignorant plaintiffs in error may upon a new trial have their constitutional rights more adequately protected and respected.

The judgment is reversed, with directions to grant a new trial.